Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James H. Alesia | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 92 CR 166 - 1 | **DATE** | May 21, 2002 |
| **CASE TITLE** | *United States of America vs. Rufus Sims* | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Enter Memorandum Opinion and Order. The court grants plaintiff United States of America's Motion to Expand the record. [1094-1] The court denies defendant Rufus Sims's Motion for Return of Property. [1058-1]

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | MAY 22 2002 date docketed | |
| ✓ | Docketing to mail notices. | | | 1099 |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| CW | courtroom deputy's initials | 02 MAY 21 PM 4:37 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 92 CR 166 |
| ) | |
| RUFUS SIMS, ) | Judge James H. Alesia |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Before the court are: (1) plaintiff United States of America's motion for expansion of the record and (2) defendant Rufus Sims's motion for return of property pursuant to Federal Rule of Criminal Procedure 41(e). For the following reasons, the court grants plaintiff's motion for expansion of the record and denies defendant's motion for return of property.

## I. BACKGROUND

Defendant Rufus Sims ("Sims") was charged in a nineteen-count indictment for actions relating to his narcotics and racketeering operations. A jury found him guilty of eight counts relating to money laundering and illegal structuring of financial transactions. On December 20, 1995, this court sentenced Sims to 327 months imprisonment. Sims appealed his conviction and sentence to the Seventh Circuit, and the court of appeals affirmed this court's decision. *See United States v. Sims*, 144 F.3d 1082 (7th Cir. 1998).

On November 12, 1999, Sims filed a motion, pursuant to Federal Rule of Criminal Procedure 41(e), for return of property seized from him between 1988 and 1992. This court

denied Sims's motion in a memorandum opinion and order dated January 25, 2001. *See United States v. Sims*, 128 F. Supp. 2d 1182 (N.D. Ill. 2001). Sims appealed this court's decision to the Seventh Circuit. Plaintiff United States of America ("the government") moved for a remand of this case so that it could expand the record to include documents relating to the property in question that were not before the court when it originally ruled on Sims's motion. On February 7, 2002, the Seventh Circuit granted the government's motion, vacated this court's January 25, 2001 decision, and remanded this case to this court for expansion of the record and further consideration.

In his motion, Sims seeks the return of the following: (1) one 1987 Rolls Royce convertible; (2) one 1988 Mercedes; (3) one 1986 Corvette convertible; (4) one 1976 Cadillac El Dorado convertible; (5) one 1988 Cadillac Seville convertible; (6) one 1979 Lincoln limousine; (7) two 1986/87 Suzuki motorcycles; (8) one 1972 Cadillac sedan; (9) one man's full-length mink coat; (10) one man's full-length raccoon coat; (11) one man's full-length beaver coat; (12) gold jewelry valued at approximately $200,000; (13) one 1986 Cadillac de Elegance; (14) one 1990 Chevrolet Camaro convertible; (15) one 1986 Cadillac Coupe convertible; (16) one 1987 Suzuki Samurai; (17) one residential home on Boeger Avenue in Westchester, Illinois; (18) one residential home located on Royal Glen Court in Lisle, Illinois; (19) one ten-unit apartment building located on Austin Boulevard in Chicago, Illinois; (20) one commercial building located on Chicago Avenue in Chicago, Illinois; (21) cash in excess of $6.2 million dollars; (22) one 1989 BMW coupe; and (23) "miscellaneous personal property valued at

approximately $100,000."[1] (Def.'s Mot. at 2.) The government instituted civil forfeiture proceedings against some of these items and administrative forfeiture proceedings against other items. The remainder of the items were seized but not forfeited by the government.

In its response, the government argues that this court has no jurisdiction over Sims's claim because of the administrative forfeiture proceedings against Sims's property, and, in the alternative, that Sims's motion is time-barred. In reply, Sims contends that this court has jurisdiction to hear this motion because the property was subject to an ongoing criminal proceeding, and claims that his claims are timely because the statute of limitations did not begin to run until 1995 when Sims claims that he first received notice of the forfeiture through his attorney.[2]

The court will first rule on the government's motion to expand the record and then review Sims's motion for return of property in light of the new documents provided by the government.

## II. DISCUSSION

### A. The Government's Motion to Expand the Record

The government seeks to expand the record to include records related to the seizures and forfeitures at issue in this motion that it did not produce when this court originally considered

---

[1] The government submitted documents regarding other items that it seized and forfeited from Sims. Because Sims does not seek the return of these items in his motion, the court need not include those items in its discussion of Sims's claims.

[2] In his motion, Sims also claims that the court, at the conclusion of the criminal proceedings against Sims, stated that there would be no forfeitures. (Def.'s Mot. at 3-4.) That statement was made with regard to the criminal forfeiture proceedings brought in Sims's indictment, not with respect to any property civilly or administratively forfeited in prior proceedings.

3

Sims's motion for return of property. The government explains that it could not provide these records when this court first considered Sims' motion because of the volume of the records, the time that had passed before Sims filed his motion, and the record-keeping systems of the DEA, FBI, and the United States Attorney's Office. Additionally, the Seventh Circuit has remanded this case for the purpose of allowing the government to expand the record.

Some of the government's newly-submitted records establish that Sims's address was his mother's house at 241 N. Waller, Chicago, Illinois. The rest of the newly-submitted records include notice of seizure letters, notices of publication, declarations of forfeiture, and other documents as to each of the items that the government claims to have seized and forfeited from Sims. The court grants the government's motion to expand the record and will consider carefully the new exhibits in ruling on Sims's motion for return of property.

## B. Sims's Motion for Return of Property

### 1. Jurisdiction

As a preliminary matter, the court must determine whether it has jurisdiction over Sims's motion. As the district court where Sims was tried, this court has jurisdiction over this collateral Rule 41(e) motion. *Casas v. United States*, 88 F. Supp. 2d 858, 861 (N.D. Ill. 1999). The government argues that this court lacks jurisdiction because administrative forfeiture proceedings have been instituted against the property that Sims seeks to recover. Although a district court may not review the merits of an administrative forfeiture, it does retain jurisdiction to consider the procedure by which the forfeiture was effected. *Garcia v. Meza*, 235 F.3d 287, 290 (7th Cir. 2000). In this case, Sims claims that his constitutional rights were violated when he did not

receive notice of the forfeitures. This court, therefore, has jurisdiction to consider Sims's claims of procedural defects in the government's forfeiture of his property. Having determined that it has jurisdiction, the court will now address the timeliness of Sims's motion for return of property. First, the court will review the timeliness of Sims's claims to recover property that was forfeited. Second, the court will determine whether his claims regarding items that were seized but not forfeited were timely.

### 2. <u>Timeliness of Sims's motion</u>

The government argues that Sims's motion is untimely because it was filed after the expiration of the six-year statute of limitations, which began to run, as to each item, at the conclusion of the forfeiture proceedings concerning that item. Sims, on the other hand, claims that his motion is timely because his claims did not accrue until 1995, following his acquittal on certain charges, when he realized that he may have been entitled to have that property returned to him. The court must determine when Sims's claims accrued in order to decide whether his motion is timely.

A post-conviction Rule 41(e) motion is treated as a civil equitable proceeding for the return of the property. *United States v. Taylor*, 975 F.2d 402, 403 (7th Cir. 1992). The court will apply the six-year statute of limitations set forth at 28 U.S.C. § 2401 to all of Sims's property that the government has civilly and administratively forfeited. *See United Sates v. Duke*, 229 F.3d 627, 629 (7th Cir. 2000) (holding that a civil action challenging an administrative forfeiture is subject to the 28 U.S.C. § 2401 six-year statute of limitations); *Casas*, 88 F. Supp. 2d at 862 (finding that the longest limitations period that could govern a

constitutional challenge to a forfeiture is six years). Sims filed his motion on November 12, 1999. Therefore, any claims in his motion that accrued after November 12, 1993 are untimely.

Sims argues that his claims did not accrue until he was acquitted on the narcotics charges against him on July 20, 1995. The government argues that Sims's claims accrued when it forfeited his property. As a general rule, a plaintiff's claims accrue when he knew or should have known that he was injured by the defendant. *Washington v. Summerville*, 127 F.3d 552, 556 (7th Cir. 1997); *Duke*, 229 F.3d at 630 (citing *United States v. Kubrick*, 444 U.S. 111, 120-21 (1979)). Although Sims admits to knowing that his property had been seized, a plaintiff challenging forfeiture proceedings is injured when the property is forfeited and not when it is seized. (Def.'s Reply Br. Ex. 1, ¶ 1.) When a plaintiff challenges forfeiture proceedings, his claims accrue when he knows or had reason to know of the procedural defect in the proceedings. *Casas*, 88 F. Supp. at 862. The defect that Sims claims tainted the forfeiture proceedings against his property is that he was not provided with notice of those proceedings. Therefore, in deciding whether his claims regarding items against which the government instituted foreclosure proceedings are timely, the court will review the record in order to determine when he knew or had reason to know of the proceedings themselves. *See Casas*, 88 F. Supp. 2d at 862 (holding that plaintiff's claim challenging forfeiture proceedings accrued when he knew or had reason to know that the property had been forfeited in a procedurally deficient manner).

First, the court will address the timeliness of Sims's claims regarding his civilly forfeited property. Second, the court will turn to the timeliness of Sims's claims pertaining to his

administratively forfeited property. Third, the court will review the timeliness of Sims's claims regarding property that was seized but not forfeited.

### a. Civilly forfeited property

First, the court must determine when Sims knew or had reason to know of the civil forfeiture proceedings involving: (1) one 1987 Rolls Royce convertible; (2) approximately $325,000 in cash; (3) one residential home located at Boeger Avenue in Westchester, Illinois; (4) one residential home located at Royal Glen Court in Lisle, Illinois; (5) one ten-unit apartment building located on Austin Boulevard in Chicago, Illinois; and (6) one commercial building located on Chicago Avenue in Chicago, Illinois.

First, the Rolls Royce and the cash (approximately $325,000.00) were civilly forfeited on May 31, 1989 by order of Judge Norgle. *See* Case No. 89 C 1250. Sims filed a claim in that proceeding and, therefore, the court concludes that he had actual notice of the forfeiture of the Rolls Royce and the $325,000.00 as of the date of Judge Norgle's order. Furthermore, the court questions the credibility of Sims's claim that he received no notice of any of the civil or administrative forfeiture proceedings at issue in this case in light of the fact that he filed a claim in the civil forfeiture proceeding before Judge Norgle.

Second, Judge Plunkett ordered the Westchester property civilly forfeited on December 20, 1989, and the Lisle and Austin Boulevard properties forfeited on August 2, 1989. *See* Case No. 89 C 3187. Notices of the proceedings and of the government's motion for entry of default and decree of forfeiture were mailed to Sims at his mother's house at 241 N. Waller

in Chicago, Illinois.[3] Additionally, notice of the proceedings was published in the Chicago Tribune. Judge Plunkett reviewed the complaint, the warrants of seizure, the certificates of publication and the mailing notices and ruled that the properties were forfeited to the United States. Despite the publication and mailing notices – and although Andrea Thomas, Sims's girlfriend and co-owner of the property, filed a claim in connection with the forfeiture – Sims never filed a claim to the property.[4]

Third, Judge Marovich declared the Chicago Avenue property forfeited on February 27, 1990. *See* Case No. 90 C 107. Sims failed to file a claim in the proceedings against the Chicago Avenue property, even though notice of the proceedings and forfeiture was mailed to him at his mother's house and published. In his supplemental declaration, Sims admits that he "knew that the government agents and local police had taken the property" at issue in this motion beginning in 1988 or 1989. (Def.'s Reply Br., Ex. 1, ¶ 1.) Therefore, Sims should have expected the government to pursue forfeiture proceedings against that property. For these reasons, the court concludes from the record that Sims, at very least, should have known of these forfeiture proceedings. Additionally, the court doubts the credibility of Sims's contention that he had no actual notice of the civil forfeiture proceedings.

---

[3] The government has provided evidence that indicate that Sims identified his mother's address at 241 N. Waller in Chicago, Illinois as his own address on his arrest record as well as for numerous other purposes. (Pl's Ex. E, Tab: 241 N. Waller.)

[4] *See United States v. Sims*, 808 F. Supp. 620, 625-26 (N.D. Ill. 1992) (explaining the relationship between Sims and Andrea Thomas). The court also notes that Sims and Andrea Thomas both filed claims in the civil forfeiture proceeding in front of Judge Norgle. (*See* Case No. 89 C 1250, Ct. Order May 31, 1989).

The court concludes that Sims had actual notice of the forfeiture proceedings against the Rolls Royce and approximately $325,000 in cash. Furthermore, the court finds that Sims should have known of the other two civil forfeiture proceedings as of the dates of the orders of forfeiture. Thus, the statute of limitations for challenging the civil forfeiture of the above-listed property began to run on the date of the forfeitures. The Rolls Royce and cash were forfeited on May 31, 1989; the Lisle and Austin Boulevard properties were forfeited on August 2, 1989; the Westchester property was forfeited on December 12, 1989; and the Chicago Avenue property was forfeited on February 27, 1990. Therefore, Sims's motion, filed on November 12, 1999, is untimely as to these six items because the six-year statute of limitations had expired before he filed the motion.

### b. Administratively forfeited property

Next, the court will determine when Sims knew or had reason to know that the following property had been administratively forfeited: (1) one 1979 Lincoln limousine; (2) two 1986/87 Suzuki motorcycles; (3) one 1972 Cadillac sedan; (4) one man's full-length mink coat; (5) one man's full-length raccoon coat; (6) one man's full-length beaver coat; (7) gold jewelry; (8) one 1986 Cadillac Coupe convertible; and (9) cash in the amounts of $20,211.00; $2,136.18; and $34,852.00, forfeited in three separate proceedings.[5] The new records submitted by the

---

[5]The government provides records to establish that Sims had no apparent legal interest in two of the administratively forfeited cars that he seeks to recover: the 1986 Corvette convertible and the 1989 BMW coupe. Therefore, Sims has no standing to challenge the forfeitures of these cars. *See United States v. Funds Totalling $42,958.85*, No. 93 C 2241, 1994 WL 46695, at *2 (N.D. Ill. Feb. 14, 1994) (holding that a plaintiff who had no specific or secured interest in property lacked standing to object to the forfeiture of the property).

government indicate that all of this property in which Sims had an interest was administratively forfeited by the DEA on or before June 26, 1992. The court will decide when Sims's claims regarding these items accrued and then apply the six-year statute of limitations to determine whether these claims are timely.

The court finds that Sims had actual knowledge of the administrative forfeiture proceedings against these items of property. First, the government sent at least one notice of seizure letter to Sims for each item of property. Letters for all but one of the items, one of the Suzuki motorcycles, were sent to Sims at his mother's house. Furthermore, the certified mail return receipts establish that many of those letters were signed for, on Sims's behalf, by someone at the house. In addition to the letters mailed to Sims at the Waller address, the government mailed notice of seizure letters to Sims at other addresses attributed to him as well as his lawyer's office. Several of those letters were signed for on his behalf. Second, Sims was deprived of the use and possession of the property – including several cars, large amounts of cash and jewelry, and other luxury items – at the time of the seizure. Therefore, he should have anticipated receiving information regarding subsequent forfeiture proceedings. Once again, the court notes that Sims admits that he knew in 1989 that his property was seized. (Def.'s Reply Br., Ex. 1, ¶ 1.) Given the nature and value of the items, along with the fact that they were seized from Sims and his family and associates, any claim that Sims did not know that his property had been taken would not be credible.

If, in fact, Sims did not actually know of the forfeiture proceedings, he had reason to know of the subsequent forfeiture proceedings against his property. *See Duke*, 229 F.3d at 630.

10

*See also Bailey v. United States*, No. 96 C 1405, 1996 WL 494270, at *2 (N.D. Ill. Aug. 27, 1996) (finding that the defendant should have known he was injured at the time the property – including cash, a watch, a wallet, and a gun – was seized). In the improbable event that Sims did not actually know about the seizure and forfeiture of his property, he cannot close his eyes "to a known probability that he has been injured, even if he is not certain." *See Duke*, 229 F.3d at 630. Sims admits that he knew the property had been taken but states that he did not know that he would be entitled to its return until he was acquitted. (Def.'s Mot. at 9.) Therefore, the court concludes that Sims, at very least, should have known of the forfeiture of these items of property at the time that the forfeiture occurred. *See Duke*, 229 F.3d at 630 (holding that plaintiff seeking return of forfeited property knew or should have known of the forfeiture where the plaintiff knew that the property had been seized, was regarded by the government as proceeds and instrumentalities of crime, and did not expect the property to be returned to him).

Therefore, Sims knew or should have known of the forfeiture proceedings regarding these items when the proceedings took place. Thus, the statutes of limitations accrued on the dates the property was administratively forfeited – the last being on June 26, 1992. Because the statute of limitations is six years, Sims's motion, filed on November 12, 1999, is untimely as to these items.

### c.   Property that was seized but not forfeited

The new records provided by the government do not account for all of the property claimed by Sims. Particularly, the documents do not describe forfeiture proceedings for: (1) the remainder of the $6,200,000.00 in cash claimed by Sims; (2) jewelry in the full value of Sims's

11

claim; (3) the 1988 Mercedes; (4) the 1976 Cadillac El Dorado; (5) the 1988 Cadillac Seville; (6) the 1986 Cadillac de Elegance; (7) the 1990 Camaro; (8) the 1987 Suzuki Samurai; or (9) Sims's "miscellaneous personal property."[6] Sims does not identify any forfeiture proceeding nor does the government's expanded record provide any civil orders of forfeiture or declarations of forfeiture for these items. Although this property may have been forfeited at some time, neither party offers any evidence of the forfeiture and when it may have occurred. It appears, therefore, that Sims is trying to assert a civil claim against the United States for taking his property. *See Bailey*, 1996 WL 494270, at *2 (analyzing as a tort claim plaintiff's claim for return of property that was seized but not forfeited).

In order to bring a tort claim against the United States in order to recover his property, Sims first must have presented the claim to the appropriate federal agency within two years after the claim accrued. 28 U.S.C. § 2401. Sims has made no argument and provided no evidence that he has presented his claims to any federal agency. Because Sims has not established that he has complied with this requirement, his claims are not timely.

Even if he had properly presented his claim to the appropriate federal agency, the court has already noted, *supra* Sect. II.B.2, that any claim against the United States is subject to a

---

[6]Sims provides no evidence that the government seized any of these items. However, the court will assume that the government seized but did not institute forfeiture proceedings against these items. In its motion to expand the record, the government directs the court's attention to records regarding four vehicles that it contends are so similar to four vehicles claimed by Sims – the 1988 Cadillac Seville, the 1986 Cadillac de Elegance, the 1990 Camaro, and the 1988 Suzuki Samurai – that the court should assume that those records describe the seizure and forfeiture of the vehicles that Sims seeks to recover. The court declines to make that assumption and will treat these four vehicles as having been seized but not forfeited.

maximum six-year statute of limitations. 28 U.S.C. § 2401(a). In this case, there are no records of forfeiture proceedings against this property, so Sims's injury was the government's seizure of his property. Therefore, Sims knew – or at least should have known – that his property was seized when the government took the property. *See Bailey*, 1996 WL 494270, at *2 (finding that the statute of limitations for bringing a claim for unlawful seizure of property accrues when the property is taken). Therefore, the court concludes that Sims's claim as to each item accrued as of the date when the government seized that item. Again, the court notes that Sims admits that he "knew that the government agents and local police had taken the property" at issue in this motion beginning in 1988 or 1989. (Def.'s Reply Br., Ex. 1, ¶ 1.) Additionally, he did not expect at that time to get that property back. (Def.'s Mot. at 9.) Furthermore, the court is skeptical of any contention by Sims that he did not know that these items had been taken due to the fact that these were items of significant value that had been seized from Sims and his family and associates. The court repeats that it will not allow Sims to close his eyes "to a known probability that he has been injured, even if he is not certain." *Duke*, 229 F.3d at 630.

Sims admits in his motion that all the items that he seeks to recover were seized before the end of 1992. (Def.'s Reply at 7.) Therefore, Sims's claim accrued on December 31, 1992, at the very latest, as he knew or should have known of the seizure of the property by that date because, by his own admission, all his property had been seized by that date. *See Bailey*, 1996 WL 494270, at *2 (holding that plaintiff's claim for unlawful seizure of property accrued when the property was seized). Applying the six-year statute of limitations to Sims's claims, the court

concludes that he would have had to file this motion by December 31, 1998. Accordingly, the court concludes that Sims's current motion, originally filed on November 12, 1999, is untimely.

In conclusion, the court finds that Sims's claims challenging the forfeiture of his property accrued – at the latest – when the forfeiture proceedings occurred. Likewise, his claims seeking the return of seized property accrued at the time the property was taken. Therefore, the court finds that his claims accrued more than six years before Sims filed this motion and, therefore, fall outside the applicable statute of limitations. Accordingly, the court concludes that Sims's motion for return of property is not timely and must be denied.

### III. CONCLUSION

For the foregoing reasons, the court grants the government's motion for expansion of the record and, after a careful review of the expanded record, denies Sims's motion for return of property.

Date: **MAY 2 1 2002**

James H. Alesia
United States District Judge